IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA FOR THE USE OF D.R. SWINDLE CONSTRUCTION, L.P. | § § § § | |
| Plaintiff, | § § | NO. 7:08-cv-00174-O |
| v. | § § | |
| TRAVELERS CASUALTY AND SURETY COMPANY, HENSEL PHELPS CONSTRUCTION CO., and BSGI COMPANY | § § § § § | |
| Defendants. | § | |

**PLAINTIFF'S OPPOSITION TO BSGI'S MOTION TO COMPEL
<u>ARBITRATION & STAY LAWSUIT PENDING ARBITRATION</u>**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiff, The United States of America For The Use of D.R. Swindle Construction, L.P. ("D.R. Swindle"), files its Opposition to BSGI's Motion to Compel Arbitration & Stay Lawsuit Pending Arbitration. Authorities presented in this Opposition mandate the conclusion that BSGI's Motion to Compel should be denied because as a matter of law, the Arbitration Provision articulated in Article IX of the BCGI Subsontract Agreement entered into between BSGI and Swindle is not valid and enforceable. Specifically:

**A.     The arbitration agreement is illusory; BSGI retains the unilateral and unrestricted right to avoid arbitration.**

**B.     The arbitration agreement is substantively unconscionable since it attempts to provide BSGI with the sole authority to resolve a payment dispute with Swindle.**

**BACKGROUND FACTS**

1.     D.R. Swindle Construction, LP ("Swindle") is a Texas limited partnership.

Swindle is the general partner of D.R. Swindle Construction, LP. Dennis R. Swindle, the President of D.R.Swindle Management, Inc. is a 53-year-old framer.

2. Chad Engelhardt of BSGI contacted Mr. Swindle and asked him if Swindle would be interested in performing framing work for the construction of private military family housing at Sheppard Air Force Base. The contract documents produced by BSGI are contradictory and make various representations to Swindle that induced Swindle to enter into the Subcontract. The three pertinent provisions are:

    a. If the Owner terminates the Contractor (whether for convenience or otherwise), the Contractor is liable to subcontractor: (1) for all work performed to the date of suspension; and (2) for all Materials then manufactured at the time of termination and all Materials otherwise located at the project site for which Contractor has not otherwise paid subcontractor. (Paragraph 40 of Exhibit "A" of the Subcontract, page 36 of 54)[1].

    b. In the event payments that are otherwise due and owing under the terms of this Subcontract are not timely made to subcontractor through no fault of subcontractor, upon 10 days written notice to contractor, subcontractor shall have the right, among other remedies that may exist under law, to stop work until payment is made. (Paragraph 39 of Exhibit "A" of the Subcontract, page 36 of 54).

    c. Contractor will provide subcontractor a sufficiently developed site (fully accessible, offering multiple units ready for framing so that a framing tempo can be achieved by subcontractor that supports the schedule) that will enable subcontractor to conduct efficient framing operations per the schedule. It is understood that if the Owner or Contractor delays subcontractor, that subcontractor will be entitled to additional time to recover the lost time resulting from the delay. Overtime, mobilization, and acceleration costs incurred by subcontractor that may be required as a result of an Owner or Contractor delay will be considered per the terms of the Subcontract. (Paragraph 40 of Exhibit "A" of the Subcontract, page 37 of 54).

3. Once Swindle began the framing work, it encountered numerous problems, which hindered its ability to perform its contractual duties. BSGI failed to provide Swindle, per the Subcontract, with a sufficiently developed site ready for framing. The absence of "multiple units

---

[1] Plaintiff adopts and incorporates by reference the Subcontract Agreement filed by BSGI with the Court on December 22, 2008 as pages 1-54.

ready for framing" resulted in delays and prevented Swindle from performing framing operations according to schedule. BSGI failed to clarify details in the construction drawings and plans, which further delayed framing. Finally, BSGI failed to pay Swindle for its services.

4. After Swindle provided BSGI with a stop work order for non-payment, BSGI removed Swindle from the project and refused to pay Swindle $78,877.88 for the framing work already performed on the Project. Moreover, BSGI refused to provide Swindle with a copy of the payment bond for Sheppard Air Force Base as required by the *Miller Act* in order to permit Swindle to pursue claim for reimbursement. *See* 40 U.S.C.A §3133 et seq. Instead of providing Swindle the payment bond information as required by statute, BSGI advised Swindle that it disputed the obligation and had no intention of paying Swindle for its framing services at the project. BSGI has never advised Swindle whether it has submitted Swindle's claim to the general contractor in accordance with Article IX of the Subcontract Agreement. Article IX contains the arbitration provision of the Subcontract Agreement that attempts to govern the parties' dispute resolution procedures.

5. The aforementioned background facts are verified by Plaintiff in the Affidavit of Dennis R. Swindle which is attached hereto by reference as Exhibit "1" and incorporated herein for all purposes.

## AUTHORITY

**A. The arbitration agreement is illusory; BSGI retains the unilateral and unrestricted right to avoid arbitration.**

6. The "federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Morrison v. Amway Corporation*, 571 F.3d 248, 254 (5th Cir. 2008); *Fleetwood Enterprises Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). That determination "is generally made on the basis of 'ordinary

state-law principles that govern the formation of contracts.' " *Id.* (quoting *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)). Paragraph 18.12 of the Subcontract Agreement[2] specifically provides that the terms and conditions of the Subcontract Agreement shall be interpreted in accordance with the laws of the jurisdiction where the project is located. The project involved in this dispute is located at Sheppard Air Force Base in Wichita Falls, Texas. Accordingly, Texas law will determine whether BSGI and Swindle have a valid agreement to arbitrate. *Morrison*, 571 F.3d at 255 (5th Cir. 2008).

7. In *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003) the Texas Supreme Court held that if the defendant retained the right to unilaterally abolish or modify the arbitration program, then the agreement to arbitrate was illusory and not binding on the plaintiff. If a party retains the unilateral, unrestricted right to terminate the arbitration agreement, the agreement is illusory. *J.M. Davidson, Inc.*, 128 S.W.3d 223, 230 n.2 (citing numerous cases).

8. Paragraph 9.2 of the Subcontract Agreement[3] gives BSGI the unilateral and unrestricted right to terminate the arbitration agreement between BSGI and Swindle. Accordingly, the arbitration agreement is illusory and unenforceable. Therefore, BSGI's Motion to Compel Arbitration should be denied.

> **B. The arbitration agreement is substantively unconscionable since it attempts to provide BSGI with the sole authority to resolve a payment dispute with the Swindle.**

9. In determining the contractual validity of an arbitration agreement, federal courts apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

---

[2] *See* page 17 of 54 of the Subcontract Agreement.
[3] *See* page 12 of 54 of the Subcontract Agreement.

Accordingly, Texas law will determine whether the BSGI arbitration agreement fails because of substantive unconscionability. Under Texas law, substantive unconscionability, refers to the fairness of the arbitration provision itself. *In re Halliburton Co.,* 80 S.W.3d 566, 571 (Tex. 2002).

10. Unconscionable arbitration contracts are unenforceable under Texas law. *In re Poly-America, L.P.*, 262 S.W.3d 337, 351 (Tex. 2008). A contract is unenforceable if, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *Id.*; *In re FirstMerit Bank N.A.,* 52 S.W.3d 749, 757 (Tex. 2001); *see also In re Halliburton Co.,* 80 S.W.3d 566, 571 (Tex.2002) ("[S]ubstantive unconscionability... refers to the fairness of the arbitration provision itself.").

11. Unconscionability is to be determined in light of a variety of factors, which aim to prevent oppression and unfair surprise; in general, a contract will be found unconscionable if it is grossly one-sided. *See* DAN B. DOBBS, 2 LAW OF REMEDIES 703, 706 (2d ed.1993); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 208, cmt. a (1979) ("The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose, and effect. Relevant factors include weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes; the policy also overlaps with rules which render particular bargains or terms unenforceable on grounds of public policy.").

12. Although not subject to precise doctrinal definition, *see Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 498 (Tex. 1991) (GONZALEZ, J., concurring), unconscionability--as delineated by the above principles--has been recognized and applied by the Texas Supreme Court for more than a century. *See, e.g., Flanagan v. Pearson,* 61 Tex. 302, 307

(1884); *Fowler v. Stoneum,* 11 Tex. 478, 493 (1854); *Hemming v. Zimmerschitte,* 4 Tex. 159, 166 (1849); *Luckett v. Townsend,* 3 Tex. 119, 131 (1848).

13. The test for substantive unconscionability is whether, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. *In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 678 (Tex. 2006) (quoting In re FirstMerit Bank, 52 S.W.3d at 757).

14. Viewed from the circumstances existing when the parties made the contract and particularly, Swindle's lack of sophistication, the BSGI arbitration clause is substantively unconscionable. Paragraph 9.1, governing dispute resolution, gives BSGI the sole authority to decide whether BSGI should raise a subcontractor's claim with the General Contractor.[4] Moreover, Swindle is bound by any outcome reached between the General Contractor and BSGI—even if Swindle was not a party to the dispute. Finally, as shall be discussed in greater detail below, paragraphs 9.1 and 9.2 are drafted in such a way that BSGI can, at its sole discretion, entirely and unilaterally eliminate arbitration as an option by taking the position that the claim is governed under paragraph 9.1.

15. The Subcontract Agreement gives BSGI several ways to avoid payment to its subcontractors. Paragraph 9.1 enables BSGI to avoid payment by refusing to submit a claim to the General Contractor. The Subcontract Agreement also gives BSGI the liberty to take the position that paragraph 9.1 incorporates paragraph 5.3 completely eliminating any duty to pay Swindle. Paragraph 5.3, "which governs all other portions of this contract" states BSGI "shall never be obligated to pay Subcontractor [Swindle] under *any* circumstances unless and until funds are in hand received by BSG in full [from the General Contractor]. The reference to

---

[4] Nothing herein requires BSG to submit or to certify . . . a claim when it cannot do so in good faith.

paragraph 5.3 in paragraph 9.1 is in direct conflict with paragraph 40 of Exhibit A of the Subcontract Agreement.

16. Not only does BSGI control the option to arbitrate, it also controls where the arbitration shall take place and reserves the right to stay arbitration proceedings if at its sole discretion BSGI determines a dispute involves an act or omission of the General Contractor. As previously noted, paragraph 9.2 provides that any dispute not resolved under paragraph 9.1, at BSGI's sole option, shall proceed forward to arbitration before the American Arbitration Association. Paragraph 9.2 additionally states the arbitration shall be either in Houston, Texas or Dallas, Texas as selected by BSGI. If BSGI determines that a subcontractor's dispute is within the scope of paragraph 9.1 and involves an act or omission of the General Contractor, BSGI has the right to stay the arbitration proceeding until BSGI has resolved the dispute under the procedures contained in paragraph 9.1. Finally, Article IX does not give the arbitrator any authority to modify or over rule any decision issued under the authority of paragraph 9.1.

17. Article IX unfairly gives BSGI the sole authority to process a claim and eliminates any obligation of BSGI to pay Swindle if the General Contractor has not previously paid BSGI. Furthermore, BSGI can eliminate the arbitration proceeding by taking the position that Swindle's claim is governed by paragraph 9.1 and the arbitrator does not have authority to resolve disputes governed by paragraph 9.1. Since BSGI can unilaterally decide the merits of Swindle's claim, the dispute resolution provisions contained in Article IX of the Subcontract Agreement are so one-sided and oppressive that they are, as a matter of law, substantively unconscionable.

## CONCLUSION

Plaintiff is concerned that if the Court grants BSGI's Motion, Swindle will never have its ability to have this dispute resolved by a neutral third party. As drafted, BSGI's dispute

resolution provisions are oppressive, unfair and grossly one-sided, with all benefits inuring to BSGI. Accordingly, BSGI's Motion to Compel Arbitration should be denied.

**FOR THESE REASONS**, Plaintiff, The United States of America For the Use of D.R. Swindle Construction, LP, respectfully requests the Court to enter an Order denying BSGI's Motion To Compel Arbitration & Stay Lawsuit Pending Arbitration; and grant Plaintiff such other and further relief as the Court deems just and proper.

    Respectfully submitted,

    **REID & DENNIS, PC**
    William E. Reid, Esq.
    Providence Towers, Suite 255 W
    5001 Spring Valley Road
    Dallas, Texas 75244-3914
    Telephone:(972) 991-2626
    Facsimile: (972) 991-2678

    By: /s/ *William E. Reid*
        William Reid
        Texas State Bar No. 16748500
        wreid@reiddennis.com

    Harold White
    Texas Bar No. 21321925
    hwhite@wf.net
    **BANNER, BRILEY & WHITE**
    Chase Bank tower
    4245 Kemp Blvd., Suite 200
    Wichita Falls, TX 76308
    Telephone:  (940) 228-4936
                    (877) 228-8552
    Facsimile:  (940) 692-8200

    ATTORNEYS FOR THE UNITED STATES
    OF AMERICA FOR THE USE OF D.R.
    SWINDLE CONSTRUCTION, LP

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of January, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Martyn B. Hill
Michael A. Harris
Pagel, Davis & Hill, P.C.
1415 Louisiana, 22nd Floor
Houston, TX 77002

             /s/ *William E. Reid*
             William E. Reid