IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA FOR THE USE OF D.R. SWINDLE CONSTRUCTION, L.P., | § § § § | |
| Plaintiff, | § § | CIVIL NO. 7:08-CV-00174-O |
| v. | § § | |
| TRAVELERS CASUALTY AND SURETY, HENSEL PHELPS CONSTRUCTION CO., and BSGI COMPANY, | § § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant's Motion to Compel Arbitration & Stay Lawsuit Pending Arbitration (Doc. No. 15), Plaintiff's Response in Opposition (Doc. No. 16), and Defendant's Reply (Doc. No. 17). Having reviewed this motion and the applicable law, the Court finds that Defendant's Motion should be and is hereby **GRANTED**.

**I.    Background**

This breach of contract action arises out of Defendant BSGI Company's ("BSGI") alleged failure to pay Plaintiff D.R. Swindle Construction, L.P. ("D.R. Swindle"), a subcontractor on the Sheppard Air Force Base Project ("Sheppard AFB Project"), for construction work completed. Plaintiff initiated this action in federal court on October 23, 2008. Doc. No. 1. On December 22, 2008, Defendant filed the present motion arguing that Plaintiff should be compelled to arbitrate this dispute because it agreed to do so in the parties' contract. Doc. No. 15. Plaintiff subsequently filed its Response in Opposition to Defendant's Motion on January 8, 2009, contending that the arbitration provision in the parties' contract is

1

unenforceable because it is illusory and substantively unconscionable. Doc. No. 16. Defendant then filed its Reply on January 12, 2009, disputing Plaintiff's asserted bases for not enforcing the arbitration provision in the parties' contract. Doc. No. 17.

## II. Legal Standard

In determining whether parties should be compelled to arbitrate a dispute, courts conduct a two-step inquiry. *Moran v. Ceiling Fans Direct, Inc.*, 239 F. App'x 931, 936 (5th Cir. 2007). First, the court determines whether the parties agreed to arbitrate the dispute by evaluating whether there is a valid agreement. *Id.* Although there is a strong federal policy favoring arbitration, this presumption "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008) (*quoting Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). Instead, courts look to the state law principles that govern contract formation to determine whether a valid arbitration agreement exists. *Id.* (*quoting First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Second, if the court finds that the parties agreed to arbitrate, it determines whether any federal statute or policy renders the claims nonarbitrable. *Id.*

## III. Discussion

### A. Compelling Arbitration

Turning to the first part of the two-step inquiry for compelling arbitration, the Court determines whether a valid arbitration agreement exists between Plaintiff and Defendant. The parties' Subcontract Agreement contains an arbitration provision in Paragraph 9.2. Def.'s Mot. to Compel, Ex. A at 11. The provision states that "[t]o the extent not resolved under Paragraph 9.1 above, any dispute between BSG and Subcontractor and/or its sureties shall, at BSG's sole option, be decided by a single arbitrator in arbitration by the American Arbitration Association

(the "AAA")." *Id.* Both Plaintiff and Defendant appear to have signed the Subcontract Agreement containing this provision, and this point is not disputed by either party. *Id.* at 20. However, Plaintiff challenges the validity of the arbitration provision in Paragraph 9.2, arguing that the arbitration agreement is (1) illusory and (2) substantively unconscionable. *See generally* Pl.'s Resp.

Plaintiff first contends that the arbitration agreement is illusory because it gives Defendant the unilateral and unrestricted right to terminate the arbitration agreement between the parties. Pl.'s Resp. ¶ 8. Plaintiff relies primarily on *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003) for the proposition that where a party retains the right to unilaterally abolish or modify an arbitration program, as Defendant has in this case, the agreement is illusory. *Id.* at ¶ 7. Defendant, on the other hand, argues that the arbitration clause is not illusory because it is part of a larger agreement, and therefore the underlying Subcontract Agreement provides the requisite consideration. Def.'s Reply ¶ 6.

Under the governing law of Texas, an arbitration agreement that is illusory is unenforceable because it lacks sufficient consideration. *See In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 607 (Tex. 2005). According to the Texas Supreme Court, an unambiguous, stand-alone arbitration agreement is illusory if one party retains the right to unilaterally abolish or modify an arbitration program. *Davidson*, 128 S.W.3d at 230 n.2. However, "when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration." *AdvancePCS Health*, 172 S.W.3d at 607 (*citing In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001)).

Although Plaintiff is correct that Paragraph 9.2 gives BSG the sole option to elect to arbitrate, Plaintiff's reliance on the *Davidson* case is misplaced. *Davidson* dealt with a stand-

3

alone arbitration agreement, whereas the arbitration agreement in the present case is part of a larger underlying contract. A simple review of the agreement between the parties evinces what appears to be an appreciable contract. Plaintiff agreed to provide labor for the Sheppard AFB Project in exchange for compensation from Defendant. *See generally* Compl. Accordingly, the underlying Subcontract Agreement provides sufficient consideration to render the arbitration agreement enforceable. *AdvancePCS Health*, 172 S.W.3d at 607. Thus, Plaintiff's argument that Paragraph 9.2 is illusory fails. *Id.*

Plaintiff next argues that the arbitration clause in Paragraph 9.2 is unenforceable because it is unconscionable. Plaintiff contends that the dispute resolution provisions in Paragraphs 9.1 and 9.2 of the parties' agreement are one-sided because they give Defendant "several ways to avoid payment to its subcontractors." Pl.'s Resp. ¶ 15. For example, Plaintiff notes that "Paragraph 9.1 enables BSGI to avoid payment by refusing to submit a claim to the General Contractor." *Id.* Furthermore, Plaintiff contends that the agreement is one-sided because it gives BSGI the sole option to arbitrate, and BSGI has control over where the arbitration takes place. *Id.* at ¶ 16. Plaintiff also contends that it lacked sufficient sophistication when entering into the agreement with Defendant. *Id.* at ¶ 14.

Defendant, on the other hand, denies that the arbitration agreement is so one-sided as to render it unconscionable and disputes that Plaintiff was an unsophisticated party to the contract. Def.'s Reply ¶ 9. Defendant points out that Plaintiff, despite its claims of unsophistication, is a limited partnership, and the president of its general partner holds himself out to be an "experienced framer." *Id.* at ¶ 10; Pl.'s Resp. Ex. 1. In addition, Defendant identifies other provisions in the Subcontract Agreement that Plaintiff either eliminated or modified, which

4

Defendant contends is "not usually the hallmark of a completely one-sided deal." Def.'s Reply ¶ 9.

Unconscionable contracts are unenforceable under Texas law. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). In general, a contract will be found unconscionable if it is grossly one-sided. *Id.* Whether a contract is unconscionable at the time of formation is a question of law. *Id.* at 349. Assessing whether an agreement is unconscionable includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). The burden of proving whether a contract is unconscionable falls on the party opposing the contract. *Poly-Am.*, 262 S.W.3d at 348.

The general test for unconscionability is if, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *FirstMerit Bank*, 52 S.W.3d at 757. The principle behind unconscionability "is one of preventing oppression and unfair surprise and not of disturbing allocation of risks because of superior bargaining power." *Id.*

In this case, Plaintiff is an experienced commercial party. Pl.'s Resp. Ex. 1. Furthermore, there is no evidence that the negotiations were one-sided, particularly considering the fact that Plaintiff modified and eliminated several terms in the agreement. *See generally id.* at Ex. 2 (exhibiting various handwritten annotations made by Plaintiff on the Subcontract Agreement). Thus, given the circumstances surrounding contract formation, as evidenced by Plaintiff's participation in the contract negotiations, it appears that procedural unconscionability

5

does not exist. As such, it stands to reason that enforcement of the arbitration clause in Paragraph 9.2 of the Subcontract Agreement would not be oppressive or cause unfair surprise. *FirstMerit Bank*, 52 S.W.3d at 757. Therefore, considering the parties' commercial backgrounds and the commercial needs of the case, the arbitration agreement does not appear to be so one-sided that it is substantively unconscionable. *Id.* Accordingly, Plaintiff's argument that the arbitration agreement is unconscionable fails.

In light of the evidence, the Court determines that a valid arbitration agreement exists based on state law principles governing contract formation. *Moran*, 239 F. App'x at 936.

Turning to the second step of the two-part inquiry for compelling arbitration, the Court looks to whether there is any federal statute or policy rendering the Plaintiff's Miller Act claim nonarbitrable. According to the Fifth Circuit, "the Miller Act does not prohibit arbitration before resort to the courts if the subcontractor and contractor had previously agreed to arbitrate disputes." *United States ex rel. Portland Constr. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1011 (5th Cir. 1976). Therefore, because there is no federal statute or policy rendering its Miller Act claim nonarbitrable, arbitration of Plaintiff's claim in this case is appropriate.

### B. Dismissal Pending Arbitration

Having determined that arbitration of this dispute is appropriate, the Court must at the very least stay this lawsuit. Where all of the issues raised before the court are subject to arbitration, dismissal is not inappropriate. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674 (5th Cir. 1999). In the present case, the Plaintiff's breach of contract claim was brought pursuant to the Miller Act, which provides that such claims are arbitrable. *See Portland*, 532 F.2d at 1011. Having referred

all matters remaining before the Court to arbitration, the Court finds that it is appropriate to dismiss this action without prejudice.

## III. Conclusion

In sum, the Court orders that the parties in this case should proceed to arbitration, and litigation in this Court shall be dismissed without prejudice. This case will be dismissed without prejudice in favor of arbitration by judgment entered separately.

**SO ORDERED** on this 1st day of July, 2009.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**